IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RYAN LAMAR THOMAS,  #250601,    )
                                  )
            Plaintiff,           )
                                  )
    v.                          )    CIVIL ACTION NO. 2:13-CV-653-WHA
                                  )             (WO)
                                  )
WARDEN LOUIS BOYD, et al.,     )
                                  )
            Defendants.        )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

In this 42 U.S.C. § 1983 action, Ryan Lamar Thomas ("Thomas"), a state inmate, challenges the constitutionality of actions taken against him during a prior term of incarceration at the Staton Correctional Facility ("Staton").  Thomas names Officer Stacey C. Singleton, Warden Louis Boyd, Sgt. Richard Parker, Officer Bruce LaFogg and the Alabama Department of Corrections as defendants.  In the complaint, Thomas maintains that defendant Singleton used excessive force against him on the morning of June 26, 2013 during check-out for trade school by choking and punching him absent provocation or need for the use of force.  *Attachment to Compl. - Doc. No. 1-1 at 1-2.*  In an amendment to the complaint, Thomas asserts that on September 17, 2013 defendant LaFogg subjected him to excessive force at the Staton/Draper health care unit when LaFogg sprayed him with a chemical agent "without cause of justification."  *Amendment to Compl. - Doc. No. 11 at 1-3.*  Finally, Thomas alleges that defendant Parker denied him access to medical treatment.

*Amendment to Compl.- Doc. No. 5* at 1.  Thomas seeks monetary damages for the alleged violations of his constitutional rights.  *Amendment to Compl. - Doc. No. 11* at 4.

The defendants filed a special report, supplemental special report and supporting evidentiary materials addressing Thomas' claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to construe these reports as a motion for summary judgment.  *Order of February 28, 2014 - Doc. No. 21.*  Additionally, in his response in opposition, Thomas seeks dismissal of his claims against Louis Boyd and the Alabama Department of Corrections "as neither Defendant [had] any personal or direct involvement with the deprivation of his constitutional rights in which the Plaintiff now seeks redress[.]" *Response in Opposition - Doc. No. 24* at 1-2.  The court therefore construes this request as a motion to dismiss with respect to defendants Louis Boyd and the Alabama Department of Corrections.

Insofar as Thomas seeks dismissal of his claims against Louis Boyd and the Alabama Department of Corrections, the court finds that the plaintiff's motion to dismiss is due to be granted.  Furthermore, upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint and Thomas' response in opposition, including his affidavit, the court concludes that the motion for summary judgment is due to be granted in part and denied in part.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment

2

as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-324.

The defendants assert that they have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims presented by the plaintiff. The burden therefore shifts to the plaintiff to establish, with appropriate

---

[1]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Despite these stylistic changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).

To proceed beyond the summary judgment stage, an inmate-plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . .

summary judgment may be granted." *Anderson*, 477 U.S. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . ., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment. . . ."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").  Hence, when a plaintiff fails to set forthspecific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence

5

to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists).  At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists."  *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant.  *United States v. One Piece of Real Property Located at 5800 SW 74thAvenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. ZenithRadio Corp.*, 475 U.S. 574, 587 (1986).

In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 525, 126 S.Ct. 2572, 2576 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. In this case, Thomas, through the submission of his sworn complaint and affidavit in response to the defendants' reports has demonstrated a genuine dispute of material fact in order to preclude entry of summary judgment on his excessive force claims against defendants Singleton and LaFogg. Defendant Parker, however, is

entitled to summary judgment on Thomas' claim regarding deliberate indifference to his medical needs.

## III.  DISCUSSION

### A.  Motion to Dismiss

In his response in opposition to the defendants' initial report, Thomas seeks dismissal of his claims against Louis Boyd and the Alabama Department of Corrections. Thomas concedes that neither of these defendants is responsible for the constitutional violations made the basis of this case.  Based on the foregoing, the court concludes that Thomas' motion to dismiss is due to be granted and his claims against Louis Boyd and the Alabama Department of Corrections are due to be dismissed with prejudice.

### B.  Absolute Immunity

To the extent Thomas lodges claims against the remaining defendants in their official capacities, these defendants are entitled to absolute immunity from monetary damages.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from

claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

The defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (damages are unavailable from state official sued in his official capacity). The court will henceforth address the claims presented against defendants Singleton, LaFogg and Parker in their individual capacities.

## C. Excessive Force

(i) <u>Qualified Immunity</u>. With respect to Thomas' excessive force claims against defendants Singleton and LaFogg in their individual capacities, the defendants argue they are entitled to qualified immunity. "Under the doctrine of qualified immunity, if the defendant establishes that he was acting within the scope of his discretionary authority when the alleged excessive force occurred, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *Skop [v. City of Atlanta*, 485 F.3d 1130, 1136-1137 (11th Cir. 2007)]. To defeat qualified immunity, a plaintiff must show both that a constitutional violation occurred and that the constitutional right violated was clearly established. *Fennell [v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009) (per curiam)]. In Eighth Amendment excessive force cases, however, 'the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of

circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution.' *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002)." *Bowden v. Stokely*, 576 Fed. App'x 951, 954-955 (11th Cir. 2014) (per curiam); "While . . . there is no per se rule barring qualified immunity in Eighth Amendment cases, where the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate. *See Skrtich [v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)]." *Bowden*, 576 Fed. App'x at 956.   Accordingly, this court will consider whether the plaintiff's allegations that Singleton and LaFogg maliciously and sadistically used excessive force against him, which the court must take as true for purposes of summary judgment, sets forth violations of his Eighth Amendment rights.

(ii)   <u>Excessive Force</u>.   Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment.   *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).   The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).   The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Hudson*, 503 U.S. at 8 (internal quotations omitted).   With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."   *Id*.   In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury."   *Id*. at 4.   "Injury and force . . . are only

imperfectly correlated, and it is the latter that ultimately counts.   An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).   The court, however, further directed that "the relatively modest nature of [an inmate's] alleged injuries will no doubt limit the damages he may recover." *Id*. at 40.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301.   "'When prison officials maliciously and sadistically use force to cause harm,' the Court recognized, 'contemporary standards of decency always are violated . . . whether or not significant injury is evident.   Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.' *Hudson*, 503 U.S. at 9, 112 S.Ct. at 995[.]" *Wilkins*, 559 U.S. at 38.   Thus, in an excessive force case such as the one at hand,

"the 'core judicial inquiry' is 'not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct.1175, 1178, 175 L.Ed.2d 995 (2010) (per curiam) (quotation marks omitted) (concluding that a gratuitous beating by prison guards, even without injuries requiring medical attention, violated a prisoner's Eighth Amendment rights)." *Bowden*, 576 Fed. App'x at 953.

Thomas asserts that on June 26, 2013 at approximately 7:30 a.m., while waiting with other inmates to check-out for trade school, he was watching a rat eat a cheese cracker and fell to the back of the line. Defendant Singleton asked Thomas what he was doing, cursed him and then began to choke him. *Attachment to Complaint - Doc. No. 1-1* at 1-2. Thomas "put [his] hands up and tried to back away" advising Singleton there was no need to hit him. *Id.* at 2. Singleton then punched and hit Thomas in the chest and face. *Id*. Another officer arrived on the scene and sprayed Thomas with a chemical agent. The chemical agent also affected defendant Singleton. Within minutes of the altercation, Thomas was transported to the health care unit at Staton for decontamination and treatment. *Defendants' Exh. C - Doc. No. 20-3* at 13. The attending nurse observed that Thomas' eyes were pink but that he had "no open areas, cuts, bruises, or scrapes[.]" *Id*. She also noted "no pain or discomfort [was] voiced" by Thomas. *Id*. After completion of her examination, the attending nurse released Thomas to the custody of correctional officials for return to the facility. *Id*.

Thomas next alleges that on September 17, 2013 defendant "LaFogg became physically abusive in front of the healthcare nurses, then chemically sprayed [him] with pepper spray without cause or justification." *Amendment to Compl. - Doc. No. 11* at 3.

The defendants adamantly deny Thomas' claims regarding the alleged acts of excessive force. Defendant Singleton addresses the excessive force claim lodged against him as follows:

> On June 26, 2013, I was assigned as the Draper/Staton Trade School Back Gate Officer. At approximately 7:30 am, I was counting inmates as they entered the back gate to go to Trade School. At that time, I observed inmate Ryan Thomas walking back and forth to the gate while staring at several of the female drug counselors. I gave him approximately ten loud, verbal commands to continue through the gate. He failed to comply with those orders, and instead continued to stare. Once or twice, I did state something to the effect of, "get your ass through the gate." After telling him one last time, he finally continued through the gate. I asked him why he had not complied [with my orders], and he refused to answer and instead was staring me down. I responded by taking him by the elbow to escort him to the front of the line to report the incident to the Sergeant, who was standing at the front of the line. [Thomas] then snatched away from my hands and assaulted me by punching me twice in the face. I attempted to wrap my arms around his torso to keep him from hitting me, and he pushed me in the chest area. A slight tussle ensued afterward, and another officer hearing the commotion responded to the area and used his pepper spray. Inmate Thomas disengaged, and allowed himself to be handcuffed. The entire incident lasted maybe twenty to thirty seconds. At no time did I threaten inmate Thomas. During the incident, I was sprayed in the face, and reported to the health care unit for decontamination approximately fifteen minutes later.

*Defendants' Exh. E - Doc. No. 20-5* at 1-2.

Defendant LaFogg maintains that:

> On September 17, 2013, I was assigned as the Rover in the Health Care Unit at Staton Correctional Facility, which administers health care for four ADOC facilities in the area. That particular day, the Health Care Unit was very busy, and the inmates from both Elmore and Draper Correctional Facilities showed up at approximately the same time, which happened to be

around lunch time.  The nurse at the time indicated to me that she had to go to lunch, and, therefore, I ordered the inmates to go into the HCU's holding cell until they could be seen.  All of the inmates complied, except one, Inmate Ryan Thomas.  I gave Inmate Thomas another direct order to proceed to the holding cell, and he again refused stating, "[n]o, they called me over here, and I'm going to see the nurse!"  Because Inmate Thomas refused to willingly [to the holding cell], I placed my hand on his arm in the escort position.  It appeared at first that he was going to comply, but then he snatched away from my grasp and stepped towards me threatening, "Don't put your hands on me, or I'll knock you out."  In response, I protected myself by deploying a one-second burst of pepper spray.  The first burst did not appear to be effective because Inmate Thomas continued coming towards me.  I then deployed a second one-second burst of pepper spray, and he finally became compliant.  Thereafter, he was helped up and escorted to be decontaminated. . . .

*Defendants' Exh. G - Doc. No. 20-7* at 1-2.

Even though the defendants dispute the version of events presented by Thomas, this court is required at this stage of the proceedings to view the facts in the light most favorable to Thomas and draw all reasonable inferences from those facts in his favor.  *Bradley v. Franklin Correctional Service, Inc.*, 739 F.3d 606, 608 (11th Cir. 2014); *Anderson v. Liberty Lobby*, 477 U.S. at 255 (all justifiable inferences are to drawn in favor of the party opposing summary judgment). In that vein, Thomas provides that defendant Singleton chocked, punched and hit him without provocation and while he posed no threat to Singleton or the security of the facility.  Thomas further asserts that defendant LaFogg used a chemical agent against him absent provocation and for no reason.  Thomas maintains that the actions of the defendants caused him to endure pain and the adverse effects of a chemical agent.  In sum, Thomas contends "that he was the victim of an unprovoked attack [on two separate occasions] in circumstances that did not present a risk of creating a disturbance or harming staff or other inmates.  This version of the events could support an

excessive force claim despite the lack of serious injuries." *Bowden*, 576 Fed. App'x at 954.

As previously explained, defendants Singleton and LaFogg deny Thomas' allegations regarding the use of excessive force and maintain that at no time during the incidents at issue did either of them utilize more force than necessary to subdue and gain control of Thomas after he refused orders and took actions which both defendant Singleton and defendant LaFogg perceived as threatening.  Nevertheless, viewing the facts in the light most favorable to Thomas, the court concludes that defendants Singleton and LaFogg are not entitled to qualified immunity as the plaintiff has alleged facts sufficient to survive their motion for summary judgment regarding the excessive force claims lodged against them.  *Skrtich*, 280 F.3d at 1301.  Specifically, disputed issues of material fact exist regarding the need for the use of force by the defendants, the nature of the force used and whether the defendants acted "maliciously and sadistically" to cause harm.  Consequently, the motion for summary judgment with respect to the claims of excessive force presented against defendants Singleton and LaFogg in their individual capacities is due to be denied.

### D.  Deliberate Indifference to Medical Needs

Thomas makes the conclusory allegation that defendant Parker, on various unidentified occasions, denied him access to medical treatment for issues related to his chronic asthma which resulted in his missing several appointments with health care personnel.  Thomas also alleges that defendant Parker caused him to miss an x-ray scheduled for August 1, 2013.  Parker adamantly denies these allegations and states that "[a]t no time did I refuse medical treatment to . . . Thomas[.]" *Defendants' Exh. B - Doc. No. 20-2* at 1.  Parker further avers that anytime "an inmate has a valid complaint about a

medical emergency; I must immediately take the inmate to the Health Care Unit.  If the complaint is not an emergency, the inmate must fill out a sick call form to schedule an appointment." *Id*.  The medical records filed by the defendants in support of their report establish that during the period of time relevant to the complaint Thomas submitted numerous sick call requests regarding chest pains, tightness in his chest and/or shortness of breath. *Defendants' Exh. C. - Doc. No. 20-3* at 2-40.  These records further demonstrate that Thomas appeared at the health care unit for treatment regarding each such request with only one exception.  *Id*.  Specifically, an appointment scheduled for July 23, 2013 to address a July 18, 2013 sick call request submitted by Thomas referencing chest pain and shortness of breath was rescheduled by the attending nurse to July 24, 2013 as correctional officials were "short staffed" and unable to escort Thomas to the initially scheduled appointment. *Id*. at 18.  It is therefore apparent that the nurse did not deem the request for treatment an emergency situation as she agreed to delay the appointment for one day rather than dispatch a medical professional to examine Thomas.  With respect to the x-ray appointment set for August 1, 2013, the medical records indicate that health care personnel rescheduled this appointment for August 2, 2013, *Id*. at 38, and Thomas underwent the x-ray on this date.  *Id*.  at 25.  The results of this chest x-ray showed "[c]ardiomediastinal structures unremarkable.  Lungs are well expanded and free of acute infiltrate.  Study is negative for effusion.  Conclusion:  Study is negative for acute cardiopulmonary process." *Id*.  A subsequent x-ray performed on August 7, 2013 showed "[t]he heart is normal in size and configuration.  The mediastinum is normal without adenopathy.  The lung fields are clear without mass, infiltrate, congestion or effusion.  Bony structures are unremarkable

16

without acute fracture or destructive lesions.  Conclusion:  No acute cardiopulmonary disease seen." *Id*. at 24.  In addition, when Thomas reported to the health care unit on September 3, 2013 complaining of shortness of breath and chest pains, the Certified Registered Nurse Practitioner performed an EKG on Thomas which showed that his heart was functioning within normal range. *Id*. at 35.

A prison official may be held liable under the Eighth Amendment for acting with "'deliberate indifference'" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974 (1994).  A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, . . . and [that] the official does not respond[] reasonably to the risk'[.]" *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), quoting *Farmer*, 511 U.S. at 844, 114 S.Ct. at 1982-1983.  To obtain relief, the plaintiff must also present evidence that the constitutional violation caused him to suffer an injury. *Marsh*, 268 F.3d at 1014.

In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation.  With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d 1028-1029.  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also

draw the inference. . . .   The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . .   [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . .   It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."   *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

To be deliberately indifferent, a defendant must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'"  *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . .   Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference."  *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.  "The known risk of injury must be a strong likelihood, rather than

a mere possibility before [the responsible official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted). As the foregoing makes clear, "[m]erely negligent [conduct] . . . does not justify liability under section 1983." *Id*. Pursuant to the aforementioned criteria, Thomas is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant[s'] deliberate indifference to that risk; and (3) causation[]" in order to survive summary judgment on a claim arising from alleged deliberate indifference by the defendants. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Farmer*, 511 U.S. at 837-838 (To circumvent entry of summary judgment on a properly supported motion, a plaintiff must produce sufficient evidence which demonstrates (1) an objectively substantial risk of serious harm; (2) a subjective awareness of this risk on the part of the defendant; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused his injuries); *Marsh*, 268 F.3d at 1028-1029 (same). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511

U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

The record before the court demonstrates that Thomas received medical treatment for his chest pains, shortness of breath and chronic asthma upon submission of sick call requests and at chronic care clinic appointments while confined a Staton. The medical records refute Thomas' allegation that he missed several sick call appointments. Specifically, these records establish that Thomas merely had one such appointment rescheduled from July 23, 2013 to the following day due to a staffing shortage. With respect to the x-ray scheduled for August 1, 2013, the medical records demonstrate that health care personnel rescheduled this appointment for August 2, 2013 and Thomas underwent the x-ray on this date, the results of which showed unremarkable cardiomediastinal structures with well expanded lungs "free of acute infiltrate" and "negative for effusion." *Defendants' Exh. C - Doc. No. 20-3* at 25.

Thomas has failed to present any evidence which indicates defendant Parker knew Thomas suffered a serious medical need and with this knowledge prevented him access to medical treatment. Moreover, the record contains no evidence that the manner in which Thomas was provided access to medical treatment created a substantial risk to his health or that Parker had knowledge of a substantial risk to Thomas' health and consciously

disregarded such risk.  The record is therefore devoid of evidence, significantly probative

or otherwise, showing that defendant Parker acted with deliberate indifference to Thomas'

medical needs.  Consequently, the court concludes that summary judgment is due to be

granted in favor of defendant Parker on the deliberate indifference claim presented by

Thomas.  *Carter*, 352 F.3d at 1350; *Holifield*, 115 F.3d at 1564 n.6; *Harris*, 65 F.3d at 916.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The plaintiff's motion to dismiss be GRANTED.

2.  The plaintiff's claims against Louis Boyd and the Alabama Department of
Corrections be DISMISSED with prejudice.

3.  The defendants' motion for summary judgment with respect to the plaintiff's
claims against defendants Singleton, LaFogg and Parker be GRANTED in part and
DENIED in part as addressed herein.

4.  The defendants' motion for summary judgment with respect to the plaintiff's
claims for monetary damages lodged against defendants Singleton, LaFogg and Parker in
their official capacities be GRANTED and these claims be DISMISSED with prejudice as
the defendants are entitled to absolute immunity from such relief.

5.  The defendants' motion for summary judgment as to the plaintiff's claim of
deliberate indifference against defendant Parker in his individual capacity be GRANTED
and this claim be DISMISSED with prejudice.

6.  The motion for summary judgment filed on behalf of defendants Singleton and LaFogg with respect to the plaintiff's claims of excessive force lodged against them in their individual capacities be DENIED.

7.  This case be set for a jury trial on the plaintiff's surviving claims of excessive force lodged against defendants Singleton and Parker.

It is further

ORDERED that **on or before August 24, 2016,** the plaintiff may file objections to the Recommendation. The plaintiff must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.   Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the plaintiff to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 10th day of August, 2016

_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE